IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

GOVERNMENT ACCOUNTABILITY
& OVERSIGHT,                              Civil Action
                                         No. 1: 24-1829
          Plaintiff,

     vs.                                 Washington, DC
                                         November 15, 2024
U.S. DEPARTMENT OF ENERGY,
                                         10:35 a.m.
          Defendant.
_____/

                    TRANSCRIPT OF MOTION HEARING
             BEFORE THE HONORABLE RANDOLPH D. MOSS
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:        Matthew D. Hardin
                          HARDIN LAW OFFICE
                          1725 I Street NW
                          Suite 300
                          Washington, DC 20006


For the Defendant:        Brenda A. Gonzalez Horowitz
                          Erika Kirstie Oblea
                          Courtney Meyer
                          DOJ-USAO
                          U.S. Department of Justice
                          601 D Street NW
                          Washington, DC 20530


Court Reporter:           SHERRY LINDSAY
                          Official Court Reporter
                          U.S. District & Bankruptcy Courts
                          333 Constitution Avenue, NW
                          Room 6710
                          Washington, DC 20001

P R O C E E D I N G S

THE COURT:  Civil case number 24-1829, *Government Accountability and Oversight versus US Department of Energy*.

Would counsel please state their name at the podium, starting with plaintiff's counsel.

MR. HARDIN:  Good afternoon.  Matthew Hardin for the plaintiff.

THE COURT:  Good afternoon.

MS. GONZALEZ HOROWITZ:  Good afternoon, Your Honor.  Assistant US Attorney Brenda Gonzalez Horowitz on behalf of the Department of Energy and with me is my colleague AUSA Erika Oblea.

THE COURT:  All right.  Good afternoon to both of you.  So we are here on the parties' cross motions for judgment on the pleadings or to dismiss.  And so why don't I go ahead and start with Mr. Hardin.

MR. HARDIN:  Thank you, Your Honor.

I want to talk primarily about what began and still is case 1829.  There are some other cases and those I think the posture is a little bit different and I will address those at the end.  1829 is the case in which the government originally said at our status hearing they located 97 potentially responsive records, about 4,300 pages.  And we were seeking and are seeking expedited processing of that request.

Now, after our last status hearing, the government

changed its position.  They said, well, actually, none of those records were responsive.  There is zero responsive records and so the whole case is moot.  That was the government's response.

And I want to point out to the Court and this is also in our briefing that the statute says the only way you can moot a request for expedited processing is by providing a complete response, not a response, not an arguable response, a complete response.

And if we go to --

THE COURT:  I'm sorry.  But when would I ever know that was the case?  When would you all ever know that was the case?  And say, well, we know it is everything here, you might always say, well, I don't know about the adequacy of the search.  How would we ever know?

MR. HARDIN:  So I understand the instinct that the Court has there, because I think in an ordinary case, the way to adjudicate that would be not in this posture, an expedited processing.  The ordinary thing to do would say, Your Honor, let's brief it on summary judgment and argue about the adequacy of the search.  That would be the ordinary thing to do.  This case is a little bit special.  And the reason that it is special -- I am going to ask that the Court take notice of our request, which was attached to the complaint as Exhibit A.  It is ECF 1-1.  They have admitted or not denied in their answer that this is the request.  So we are not -- that is not a fact

in dispute.  I think that is appropriate for motion for judgment on the pleadings.  And page 2 of the request what we -- we obviously requested several things on page 1 of the request.  That is the LNG export study and any transmittal emails.  But if you go to page 2, we say, this was something that was produced in 2023 and senior political officials then buried it to keep it from the public's view.  So this is what we described.  We wanted records that were produced and then buried.

Now you try and reconcile that with their determination letter.  And they completely rewrote the request.  This is not a search for what we asked for, that we are now challenging the adequacy of.  This is the government post facto came in and said, we have interpreted your request to seek things that are ready for public viewing or that are releasable.  That is exactly what we didn't request.  Whatever they have responded to, whatever this determination letter is in response to that they have submitted claiming the case is moot, is not our request.

And it is not even an arguable interpretation of our request.  It is, in our view, nothing more than an attempt to kick the can further down the road.  Now, the Court can have us brief that in the posture of summary judgment on an inadequate search.  And we can do that, but I think that is effectively denying the plaintiff relief in the form of expedited

processing and allowing the agency to game the system.

THE COURT:  So what if the agency had said, okay, your request for expedited processing is granted.  We have engaged in expedited processing and we have found nothing is responsive or we found two documents that are responsive, here they are.  Could you then bring a suit and say, they have denied us expedited processing and that you should order them to expedite processing?

MR. HARDIN:  Well, if they have granted expedited processing, I don't think a suit is ever proper on that issue.

THE COURT:  So why isn't this the same circumstance?  They have said, whether we have granted you expedited processing or not, we are now done with processing.  You may agree or disagree, just like you might under my first scenario agree or disagree with the results.  They have said, we have done it now.  And this is what we have found.  You may disagree with the adequacy of that.  But I don't know if I understand what the difference of that would be or a circumstance in which they have said, okay, we are going to grant expedited processing.

MR. HARDIN:  Your Honor, I think -- so to tweak this hypothetical a little bit, I think if the agency had said, we looked for what you asked for and we have no records, we would, obviously dispute that.  The proper place to do that would be summary judgment on the merits, which is case 2039.  Granted,

they are all the same case number now but --

THE COURT:  Right.

MR. HARDIN:  In an ordinary case, that would be the thing to do.  And, again, I understand the Court's instinct. What I am suggesting is that if we asked for a pink elephant and they say, we looked for white rabbits and we sure don't have any, whatever they responded to isn't and it certainly isn't a complete response to our request.  And then you can look at that in light of the representations to this Court in which the agency has said there is records and then changed its story after the fact, long after the expedited processing request was submitted, long after the litigation began.  And, in fact, long after they had identified responsive records, they suddenly changed the story and said, we are looking for white rabbits.  But that is not our request and I think that is the key difference here.  If they said --

THE COURT:  What is your request for?  What are you looking for?  I can read.  I am asking in your words.  I have got it in front of me.

MR. HARDIN:  The LNG study that was produced and any emails transmitting the LNG study.

THE COURT:  Right.  Are you looing for drafts of that, because that is not what it says?  Primary drafts? Working drafts, first draft, second draft, or are you just looking for the study?

MR. HARDIN:  We are looking for the study.  I think that is in the request.  And I think the agency after litigation has taken the position that these are all drafts.  But I don't think that was the position at the time.  And in fact, I think that we expressly -- if you look at the request in its totality, I understand we are requesting the study on page 1 and it is in bold print.  But on page 2, highlighted, we are saying, this is something the agency buried.  And so we are expressly saying, this is something the agency doesn't want us to have, which is -- or doesn't want the public to see.  That is part of the request.  That is the reason the FOIA request was submitted is to force something into the light that they would rather hide.

And then if you look at their in-court determination letter, which they have submitted in support of the motion to dismiss, they say, well, we have decided what you really wanted is things that were ready for release, things that were ready for the public to view.  That is a totally different universe.  Because when you look at our request, we are saying, you don't want the public to have it; and they are saying, you are right, we don't have anything we want that public to have.  That is not our request, Your Honor.

THE COURT:  Okay.

MR. HARDIN:  So in that posture, I think 1829 is the case that we have the most to argue about today.  I think we

are entitled to a complete response.  I don't think we have gotten it.  I think we are entitled to expedited processing.  And I think we are entitled to it today.  If the Court is not inclined to grant it today, as an alternative form of relief, I would say let's brief the adequacy of this search right away.  And if we win on that, then we can revisit that issue of expedited processing of those 4,000 documents once that is addressed, because I think that the --

THE COURT:  What you're focusing on now though is one -- I take it one particular version of this study that you say was suppressed; right.  That presumably is not 4,000 pages; right?

MR. HARDIN:  So there is 97 -- I would have thought there would be one study and one email when I submitted the request.  That is what I would have thought.  But the agency's response is there is 97 documents --

THE COURT:  No, that is not -- come on.  What they said was potentially responsive documents.  That is not -- they didn't say we have found 97 responsive documents.  They said potentially responsive.

MR. HARDIN:  Correct.

THE COURT:  Which happens -- I have got to tell you, I am not sure I have ever had a FOIA case in which the agency hasn't come in and said there are vastly more potentially responsive documents than there were responsive documents.  You

do this for a living so you know that happens every day.

MR. HARDIN:  And I think that within -- again, when we submitted the request or when the client submitted the request and I was aware of it, I would have thought we are talking about one email and one study.  They said 97 potentially responsive.  I think what that likely means is that transmittal emails got replied to or something like that, that transmittal question likely led to the volume.  I have no idea. I am not the FOIA officer.  But that was their determination that there were 97.  I don't know.

If we started at 97 and we got down to 60 or 45, I would say, okay, this is how FOIA cases go.  They reviewed it. There were duplicates, something happened.  We started at 97 documents totaling 4300 pages and now we are at zero.  And we are at zero based on their own determination letter, not because they looked for what we asked for, but because they reinterpreted our request.  And they have attached their determination letter saying, well, we looked at this closer and we decided this is what you really want.  We, by the way, have attached our response saying that is not what we really want. So they just unilaterally reinterpreted the request.

I think that is why we are asking for expedited processing today.  That is why I think we are entitled to it. But we can brief the adequacy of the search and reserve that issue if the Court is not inclined to go there.  Because I

think the ultimate issue, assuming we eventually prevail and show that there are some number of documents that need to be released and that the search as cabined or as caveated by the agency as reinterpreted was inadequate.  We would still seek relief in the form of an order to process those documents expeditiously, as opposed to slowly over time.

And I will say, by the way, this transitions nicely into the other cases.  Pursuant to the Court's order at our last hearing --

THE COURT:  Before you do that, I think I have the letter you're talking about from the Department of Energy.  Can you point me to the language where you say, they have reinterpreted the request?  Are you talking about the October 10th, 2024 letter?

MR. HARDIN:  I believe Your Honor is correct.

THE COURT:  There were several response letters, so I am not sure which one you are pointing to.

MR. HARDIN:  I'm sorry, Your Honor, give me just a moment.

THE COURT:  That is fine.

MR. HARDIN:  So I am talking about the document filed at ECF 22-4.

THE COURT:  Okay.

MR. HARDIN:  And I did not print that one.  I printed the document referencing it.

THE COURT:  I have that in front of me.

MR. HARDIN:  So there is language in that in which they say, our understanding of your request -- and they -- they are saying that their understanding of our request is that we do not seek documents -- we only seek documents that are releasable or ready for public release or something to that effect.  Again, I am not --

THE COURT:  So I have 22-4 in front of me.  Let me just see.  There is two letters there.

MS. GONZALEZ HOROWITZ:  If I may, Your Honor --

THE COURT:  Yes, please.

MS. GONZALEZ HOROWITZ:  It is the first one.  It is the one that is dated October 18th, so it is 22-4 at page 1.

THE COURT:  Okay.  And then where is this language about our understanding?

MS. GONZALEZ HOROWITZ:  It is the third paragraph down on the first page.  It starts with DOE --

THE COURT:  Understands your request --

MS. GONZALEZ HOROWITZ:  Yes.

THE COURT:  Okay.  Thank you.  That is helpful.

MR. HARDIN:  So when we were in court the last time, the Court ordered us, among other things, to -- because there were originally eight cases here, the Court ordered them to provide search declarations and Vaughn indices for the other cases.  So I will briefly tick through those.  And I think that

gets us back to where we are at on 1829.  In cases 1887 and 2027, which is the same FOIA request, just in two postures.  They gave us a Vaughn log.  We have conveyed our challenges.  So I agree that we are no longer seeking expedited processing in that case, because they have issued a determination and we have conveyed our challenges.

Okay.

THE COURT:  Okay.

MR. HARDIN:  1957 and 2099, which are, again, the same FOIA request, two different postures, they gave us a Vaughn log.  We have produced our challenges, so there is no longer a question of expedited processing in that case.

THE COURT:  Okay.

MR. HARDIN:  1926 and 2077, same situation, expedited processing on the merits, but two separate cases, they gave us a no records response.  So, again, we are not seeking expedited processing, because in that case they searched for what we asked for and said they have no records.

THE COURT:  Okay.

MR. HARDIN:  So that is where we are at.

They gave us a draft declaration with respect to this case which is 1829, again, also 2039, describing their search process.  And so we have their draft declaration.  And it is not a public document with the Court and so I don't think that the Court can take judicial notice of it.  But I will proffer

that it says essentially the same thing that the letter says, which is we decided later on looking at this request that what you really wanted is things that were, you know, ready for public release.  And I just think that that is patently unreasonable, given the language of our request, ECF 1-1 at page 2, where we say this is a document that has been buried.

And so I think that if the agency can say, we have searched for something you didn't ask for and therefore moot a case, Your Honor, I think that that means that it encourages gamesmanship and I think that gamesmanship is exactly what we see here dealing with a very -- a policy that the government has enacted that has already been enjoined by one district court.  And we are winding down in terms of an administration. And I think what we see is the agency wants to do anything it can not to release anything before we have a new administration at DOE.  I think they are gaming the system here.

THE COURT:  Why would they want to wait for the new administration?  You think the new administration is going to release it?  What do they gain by that?  I'm not sure I understand that point.

MR. HARDIN:  So I believe our position -- and this is ancillary to the issues of the FOIA case --

THE COURT:  Yes.

MR. HARDIN:  Our position is that this LNG export study was the study.  It was the study.  It wasn't a draft.  It

was the study.

THE COURT:  Uh-huh.

MR. HARDIN:  Senior leadership said, bury that, we don't like the conclusion that it came to.  Get rid of that study.  And I believe furiously right now as indeed noted in our notice of supplemental authority, I believe they are trying to revise the study or come up with some new study that they can release prior to the change of administration --

THE COURT:  Okay.

MR. HARDIN:  -- so that then that administration will be saddled with this study and can't reach conclusions contrary to the study due to various principles of administrative law.  So that is, I think, the end goal here of why they want to delay release.  But within the FOIA context, I think, Your Honor, this is -- again, to get back to my analogy, if we asked for a pink elephant, they are saying, we sure did look very hard for white rabbits and we just don't have any.  That can't moot our case.  And whatever it is, it is certainly not a complete response.  I would say it is not even a reasonable response or even a good-faith response when you look at the language of our request about the study being buried and the history of this case where the agency acknowledged as of six weeks ago in open court that there were records and then at the last moment, changed its mind.

THE COURT:  Okay.  Let me hear then from Ms. Gonzalez

Horowitz.

MS. GONZALEZ HOROWITZ:  Your Honor, I think everything you just heard really reiterates our point that this is no longer a challenge on the expedited processing question and is really a challenge on the merits.  And I think everything counsel for plaintiff just reiterated to you just further demonstrates that what they really challenge is whether that agency appropriately or reasonably interpreted their request, which takes us out of an expedited processing realm and takes us into the merits, which they are free to challenge.  And we can, of course, move to briefing summary judgment on that.

I just want to note that in our briefing we pointed to several cases and especially one case that I think is particularly on point here as to whether the Department of Energy has provided a complete response.  And I think all parties agree that under FOIA, the Court is deprived of jurisdiction once an agency provides a, "Complete response to a request for expedited processing."

And Judge Howell in *Muttitt versus Department of State* which is found at 926 --

THE COURT:  Got I right here.

MS. GONZALEZ HOROWITZ:  I think that case is expressly on point for the issue that the Court is faced with here.  In that case, Judge Howell was also deciding whether a

response was, quote, complete for purposes of an expedited processing claim to determine whether it was moot.

And she specifically found that it was, because the agency had provided, quote, a complete response. And a complete response, as Judge Howell noted, was a final administrative determination. And it didn't matter whether the plaintiffs still had challenges to the adequacy of the agency search or whether its withholdings were warranted. Once the agency provided a final administrative response, regardless of whether there were records or not, it had completed its obligations.

THE COURT: So what do you say to Mr. Hardin's argument that if I submitted a FOIA request to the FBI saying, I want all FBI files that mentioned my name and I want it on an expedited basis. And the FBI drags its feet and finally I bring a lawsuit seeking to compel an expedited response and the FBI comes in and says that we have looked and there is not a single reference to Judge Boasberg in any of our files. Do you think at that point in time my request for expedition and motion to compel expedition is mooted because they have searched for any references to Judge Boasberg?

MS. GONZALEZ HOROWITZ: First, I take issue with the notion of the white rabbits and the pink elephants analogy that Mr. Hardin gave you.

THE COURT: Right.

MS. GONZALEZ HOROWITZ:  But I think the ultimate question is whether they have been provided a complete response.  I think Judge Howell was very clear as to what a complete response means and that is final administrative determination.  And we have provided that here.  And I understand his point about the 97 potentially responsive pages.  And I think the Court appropriately noted that that is fairly routine and in a FOIA case, that an agency might identify a certain subset of records that ends up ultimately not being responsive.

But I think as FOIA -- as the statute itself makes clear, ultimately what is the relief that a requester can be provided when they bring an expedited processing claim?

THE COURT:  Right.

MS. GONZALEZ HOROWITZ:  And the relief is that they are then bumped to the front of the line, so that their request can be processed "as soon as practicable."  So in our -- from our view that has been done.  There is no further relief that they could be provided on the expedited processing claim.

THE COURT:  So fair enough.  Assume that I agree with you about everything that you have just I said -- and I think I may well agree with you about everything you have just said -- but then -- say, okay, but I still have to manage a FOIA case that is in front of me.  And there is a request.  And I understand that there is an interest in expedition in handling

this.  And if I were, for example, to conclude that the response was just so off base or the search was so off base, it certainly seems it would be in my power as a District Court judge to issue an order saying, look, this response is really not responsive.  They requested expedited processing to start with and, therefore, I am going to direct that you go back and you do this right away, because that is consistent with the purposes of FOIA and purposes of the provision for expedition. I assume you agreed that if I reached that point, I could do all of that; right?

MS. GONZALEZ HOROWITZ:  So I think, of course, we would take the position that you are outside of the expedited processing realm there.

THE COURT:  Just case management.

MS. GONZALEZ HOROWITZ:  So assuming we are at the merits stage and we briefed the adequacy of the search.  And I note that in my communications with counsel for plaintiff, they don't actually challenge the agency search, they actually agree with the search.

THE COURT:  Right.

MS. GONZALEZ HOROWITZ:  The issue that they have is whether the agency reasonably interpreted their request.  And certainly I think we disagree with plaintiff's position about whether drafts were included or not in the face of the request. And I don't think that argument is really necessary for today.

That is more of a merits argument.  But certainly if the Court found that the agency did not reasonably interpret plaintiff's request, certainly it is within its power to order processing of whatever records were identified as potentially responsive within a certain window of time.

THE COURT:  And also to order, perhaps, expedited briefing on those questions too, I assume, if I am concerned that maybe there is some -- if I were to conclude that I just think the request was clearly misinterpreted and that, as a result of that, that has deprived the plaintiff of their right to expeditious processing, because even if it is not a claim they would have, it has effectively deprived them of that.  I assume I could then say, let's brief this on an expedited basis, resolve this.  And if I conclude that I agree with the plaintiffs, let's get them the documents as quickly as possible.  I assume that is all sort of an exercise of discretion that the Court could exercise in light of the purposes of FOIA as well as the purposes of the expedited processing provision, even if you are right that it may not be jurisdiction over that claim.

MS. GONZALEZ HOROWITZ:  I think you are right, Your Honor, those are all decisions that would be well within your discretion.  I would certainly push back on any notion that the plaintiff has met the compelling needs standard under FOIA or has demonstrated need for, you know, the public to be urgently

informed about this purported study.  So certainly I think that is a different conversation we would have.  But if the Court were, you know, inclined to reach the merits stage, which is where we think we are at this point.  You know, we could certainly address that at the Court's --

THE COURT:  Tell me a little bit about that merits stage now.  Because Mr. Hardin says that it is just not plausible to construe his client's request as one for final drafts.  Because particularly if a final draft is meant -- something that has been made public, he says -- and I don't have his request in front of me at the moment but he says his request said or his client's request said, we are concerned about the versions that you are hiding from the public or suppressing.

MS. GONZALEZ HOROWITZ:  So I certainly take issue with the -- the notion that the agency misinterpreted plaintiff's request.  I think if you -- again, understanding the Court doesn't have a copy of the request in front of it.

THE COURT:  I think I may actually have it in front of me.

MR. HARDIN:  It is 1-1.

MS. GONZALEZ HOROWITZ:  It is ECF number 1-1.

THE COURT:  So I have ECF 12 --

MS. GONZALEZ HOROWITZ:  It may also have been included in our consolidation motion.

THE COURT:  12-3, I think.

MS. GONZALEZ HOROWITZ:  I don't have a copy of our consolidation motion, but I do believe it was included as one of the exhibits.

THE COURT:  June 11 is the request?

MR. HARDIN:  June 7.

THE COURT:  June 7th.

MR. HARDIN:  And I have a copy of ECF 1-1, if you want me to hand it up.

THE COURT:  Let's see if I have it already.

I got the June 7th letter in front of me.  You can pull the microphone toward you, Mr. Hardin.  Where in the letter are you referring to where it says --

MR. HARDIN:  The very top of page 2.  It is highlighted language --

THE COURT:  Regarding the particular urgency?

MR. HARDIN:  Yes.  And so starting with the word requester in line 2.  And going down to line 3 and 4, that is the language, "Requester certifies to the best of its information."

THE COURT:  Ms. Gonzalez Horowitz, is it your understanding that the request does not include documents that were transmitted by the National Energy Technology Lab to the Office of Fossil Energy or studies that were transmitted, because those studies were still in draft form at that point in

time?  Is that the theory?

MS. GONZALEZ HOROWITZ:  To be clear, Your Honor, I have not reviewed any of the 97 potentially responsive records that the department originally pulled in response to this request, so I can't speak to those individual records.  What I understand is that the agency interpreted the request to only be requesting the final export study.  And that is based on the language of the request plainly because it says, "To the best of its information and belief, that DOE produce an LNG export study in 2023, footnote 1."  Footnote 1 of the request notes, these are regularly produced and released by DOE, see -- with a website to the Department of Energy's website, which includes releases of similar studies that were done in previous years.

When you go to that website that is included there in footnote 1 --

THE COURT:  Right.

MS. GONZALEZ HOROWITZ:  Those are all export studies that were finalized that were included in the Federal Register, which were open for note and comment and that were subsequently finalized and submitted by the Department of Energy.

There are various studies that were done in 2012, 2015 and 2018.

THE COURT:  Who is it who issues the ultimate study?  I mean is it a Department of Energy study or is it a National Energy Technology Lab study?

MS. GONZALEZ HOROWITZ:  I am actually not sure about that, Your Honor.  Perhaps Mr. Hardin knows better than I do.

MR. HARDIN:  I do not on that one.

MS. GONZALEZ HOROWITZ:  In any event, if you go to that website on footnote 1 of the request there is obviously no study done that was finalized in 2023.  And I think even the notice of supplemental authority that plaintiff filed with the news -- the Bloomberg news article only further underscored this point, the point that it was -- a study was being, you know, rushed to be finalized, which can only mean that it hasn't yet been done.

So I think certainly, to the extent we are even talking about the merits, I think the Department's interpretation of the request was reasonable such that we are not talking about a pink elephant and white rabbits situation.  I think that is a determination the Court can make on the merits.

THE COURT:  Yeah.

MS. GONZALEZ HOROWITZ:  And I would just note, Your Honor, that when we did file our motion, I think as Mr. Hardin confirmed just now, they are no longer, you know, challenging expedited processing on the other cases.  And that actually wasn't addressed by plaintiff in its reply.  So I think the Court could enter either -- could at least dismiss those expedited processing in the other three cases that were sought.

THE COURT:  Let me hear from Mr. Hardin again.  I want to just ask him about what would be the most expeditious process going forward at this point, because I don't think I am sort of in a position at this point to say the Department of Energy is wrong and they have to produce the documents ASAP.  But if you think this is something that needs to be briefed or keyed up, let's figure out how to do that quickly.

MR. HARDIN:  I think my --

THE COURT:  Because you are sort of jumping through the merits -- if you want me to say, yes, you are sort of so clearly right on this, I should order them to not only expedite but also to produce something where I don't really -- in a position to make a judgment as to whether they are legally obligated to do that or not.  And they are also -- I assume that it may well be that even if there were a reasonable dispute about whether the document was responsive or not, that the Department of Energy might take the view that it is still deliberative at this point and it could be withheld in any event and I would have to resolve all of that as well.

MR. HARDIN:  Thank you, Your Honor.

So the first thing I will say just for the record, because I was listening to the Court, I promise.  But just for the record, I want to say I think we are entitled to expedited processing today.  If the Court is not willing to rule on that today, I think that merits, which is originally case 2039 --

1829 was this request and expedited processing form and 2039 is the merits.  I think Your Honor could enter an expeditious summary judgment schedule in that case, which is -- I don't know how much it matters now that they are all consolidated, but it was 2039.  And we could address --

THE COURT:  Okay.  I assume that you may want summary judgment briefing on the other cases, unless you agree with respect to the holdings in those cases too.

MR. HARDIN:  So 2020 --

THE COURT:  What I would rather avoid is doing this twice, so if we are going to do summary judgment let's just do it once.

MR. HARDIN:  I agree.  2027 and 2099 we have already conveyed challenges on.  And those are ripe for summary judgment as well.

THE COURT:  Okay.

MR. HARDIN:  I just don't want to delay them pending this one, but I am happy, so as long as we brief them all expeditiously, of course, they are all ripe and ready to go.

THE COURT:  What about 2070 -- oh, there was no records.

MR. HARDIN:  And we are not challenging the no records response.

THE COURT:  Okay.  So it is just the three cases then.

MR. HARDIN:  Right.

THE COURT:  So what would you propose for a schedule?

MR. HARDIN:  I think that they could brief summary judgment on this one issue, because it is a narrow issue of --

THE COURT:  I think we -- as I said, I think we might as well do it all at once.

MR. HARDIN:  Okay.  I would certainly ask for something less than 30 days.  But I think that 30 days would be more than adequate considering that -- I will proffer the other two cases we are talking about a relatively few number of records generally and even fewer that we have challenged.  And so those are not particularly complicated cases even, if you add them in.

THE COURT:  Okay.  Let me hear from Ms. Gonzalez Horowitz.

MS. GONZALEZ HOROWITZ:  So I just -- I have a quick clarification question, Your Honor.

THE COURT:  Yes.

MS. GONZALEZ HOROWITZ:  So assuming we are briefing the adequacy of the agency search on the 1829, 2039 case and the agency determines that records that would fall within that potentially responsive bucket would be withheld under other FOIA exemptions --

THE COURT:  Right.

MS. GONZALEZ HOROWITZ:  -- how does the Court -- how

should we address that?  Because it sounds like the Court wants to do this in one go.

THE COURT:  Yeah.  I think you are -- I think unless someone tells me otherwise, I think you are entitled to plead it in the alternative and to say, we don't think those documents were responsive, but even if they were responsive we withheld them and explain the basis for that.

MS. GONZALEZ HOROWITZ:  Okay.

THE COURT:  But if I am wrong about that, someone can explain to me why.  But it seems to me that would be the most efficient way to do it, rather than doing two rounds of briefing and having me decide whether the agency's interpretation of the request was a reasonable one or not.  And then if I disagreed with the agency --

MS. GONZALEZ HOROWITZ:  Sure.

THE COURT:  -- sending it back and saying, okay, now do it.  And since the records have already been pulled, it may be possible to just do it at all once.  You may not know, but I don't know how much work there is in the 97 documents and going through these.  And it may be some number fewer than 97, because maybe some of them just have something to do with an entirely different topic or is not on point at all.  I guess you would have to do a Vaughn index on those as well.

MS. GONZALEZ HOROWITZ:  So I think in light of that, I don't -- I don't think 30 days is going to be sufficient for

us to get all of that together.  Unfortunately, our agency counsel was not able to be present today.  But I think we would ask for at least 45 days to be able to pull all of our supporting materials.  Certainly if plaintiff wanted to go first, they are entitled to do that and we could oppose and cross move, if they wanted to get their brief on file earlier.  But I think in terms of our response, we would need sufficient time for the agency to be able to pull its declaration and Vaughn indices together.

THE COURT:  Okay.  Let me see what Mr. Hardin's view is on that and whether he wants to go first or whether he wants to wait for DOE -- it does strike me, particularly if they are going to have to do a Vaughn index that 45 days is reasonable.  So you can either go first if you want and then file as soon as you want or you can wait on that and then just tell me when you want to to file your cross motion.

MR. HARDIN:  I think in light of the posture, we have to wait on them and 45 days.  And just by way of explanation I think in the 1829 case, I could move right now just because of the issue in that case which is, does their response comport with our request?  The other cases where we are dealing with challenges, you know, the agency -- if I filed summary judgment brief, I would just say they haven't carried their burden and they would say, of course not, it is not our turn yet.  So I don't know how productive it would be.

THE COURT:  So if I give them 45 days -- let me just pull the calendar up here.  It easy enough.  Today is the 15th.  So 45 days would place them right after the Christmas holiday.  So I suppose maybe January 1st or something like that?

MR. HARDIN:  That is fine, Your Honor.  And I will take 15 days to respond.

THE COURT:  Okay.

MR. HARDIN:  I want to get it done.

THE COURT:  All right.  I appreciate that.

You said how many days?

MR. HARDIN:  Fifteen.

THE COURT:  So the 16th then of January?

MR. HARDIN:  Yes, Your Honor.

THE COURT:  Okay.  What about an opposition and reply?

MR. HARDIN:  I assume that was a question.

THE COURT:  It was.

MS. GONZALEZ HOROWITZ:  I'm sorry, Your Honor.  I was just looking at my calendar.  So you said 15th you --

THE COURT:  He is to going file on the 16th.

MS. GONZALEZ HOROWITZ:  I think we would probably need three weeks to file our reply.

THE COURT:  All right.  So that takes you to February 6th.  What about final reply brief?

MR. HARDIN:  I don't know how particularly necessary

it is, but we can calendar something for 7 days after.

THE COURT:  So the 13th so it will all be briefed finally by February 13th.  So that is what I am going to do. And I am, frankly, persuaded by Judge Howell's reasoning in the *Muttitt* case with respect to the jurisdictional issue.  And I am also persuaded that you may be right, but DOE may be right and this is just not one that is so obvious on the face of it. And I think you might be right -- given my example, if they came back and said, we did the search for Judge Boasberg's records and there is nothing there.  And I said, but I asked for Judge Moss' records --

MR. HARDIN:  That was a much better example than I had.

THE COURT:  You might be right possibly, but I don't think this case is so clearcut looking at the request myself that it falls into that category.  And so I am going to grant the government's motion to dismiss on jurisdictional grounds the cases seeking expedited consideration and will deny the defense motion on the same grounds in light of section 15 -- and 552(a)(6)(E)(4), which says that a District Court in the United States shall not have jurisdiction to review an agency denial of expedited process or request for records after the agency has provided a complete response to that request.

And I understand that there may be some dispute about what the phrase complete response means.  But I think that the

best reading of complete response is that they have completed their process as far as the agency is concerned at that point. And I think any other reading of that, with the possible exception of one it is just on its face not -- so clearly not responsive that the Court could look at it and say, you just didn't respond at all.  But where they have simply just differed with you with respect to the response, I think that the statute is best construed to mean that the agency has completed its process.

And I think that reasons for -- that must be the meaning, for various reasons.  One is I just don't know how you would administer another interpretation of it, because it would mean that the Court would have to resolve the merits of each case in the process of deciding the expedition issue.  But it would also be odd, because I think the relief that I would grant would be simply sending it back to the agency and saying, put this at the top of the queue and do this.  And they would say, okay, we have done it and it is the same result, because this is what our view is on that issue.

And as I said, I thought that Judge Howell's analysis in *Muttitt versus Department of State* at 926 F. Supp. 2d 284 was compelling.  And she writes, "Based on the text of the FOIA prior precedent and the procedural posture of the incident action, the Court concludes that the plaintiff's cause of action regarding the denial of the specific request for

expedited processing are now moot."

The Court reads the Circuit's opinion in *Edmonds* to mean that the only scenario in which a court can properly grant relief to a FOIA requester "on the merits" of an expedited processing claim is when an agency has not yet provided a final substantive response to the individual's request for records. After that point, the timing of any further processing of an individual's request (either expeditiously or otherwise) necessarily occurs at the direction of the Court pursuant to a scheduling order, not to an expedited processing provision of FOIA.

And that is what I am doing here now, I am using my discretion as the District Court to ensure that there is expedited process handling of the case.  For this reason, the Court construes the phrase complete response turning to Judge Howell's language in 5 U.S.C. section 552(a)(6)(E)(4), to mean a final determination under section 552(a)(6)(A) that is a final administrative determination, whether to release any records that are responsive to the individual's request.

In order for its response to be complete, an agency need not, as the plaintiff argues, obtain a judicial declaration that its search efforts were adequate or its withholding determinations were warranted.  She continues, "Once an agency has made a final determination under section 552(a)(6)(A) the timeliness of that determination is no longer

a live controversy fit for judicial review" citing *Adkins versus Department of Justice* from the D.C. Circuit.

And there are other cases from this Court that are to the same effect and I find those cases and the analysis in them compelling.

The plaintiff's argument to the contrary doesn't persuade me.  Plaintiff contends that its expedited processing requests are not moot because the government has not issued a complete response to the plaintiff's FOIA request within the meaning of section 552(a)(6)(E)(4).

In plaintiff's view, the response is not complete because DOE has rewritten plaintiff's first FOIA request to be narrower than plaintiff's actual request.  And I just think that is a disagreement on the merits.  And it is not unusual in FOIA litigation to have disputes about the reasonable termination what the proper interpretation is of a FOIA request.

And then, specifically, the plaintiff's request sought copies of any LNG export study within certain parameters.  And DOE's final response to that request, stated that DOE search for final versions of the LNG study and did not locate any responsive records.  I can't say that on its face of it, that a reference to any LNG export study necessarily includes drafts or versions that have not been approved by the agency.  And my understanding is that the agency's view is not

simply that it just hasn't been publically released or not, but there was not, in fact, the final LNG export study.  As I said, you may be right in the end on this, Mr. Hardin, but without briefing and getting into the merits of this case, I can't conclude as a facial matter at the threshold of the case that the agency is necessarily wrong, that the reference to any LNG export study must include drafts or versions that the agency had not finalized yet.  And I had asked you the question about whether it is the department that actually issues the study or whether it was the National Energy Technology Lab that issues the study.  And you didn't have the answer to that.  And under those circumstances, I think that just bolsters my conclusion that, at this point in the case it is just too early to conclude that the agency's interpretation is so facially implausible that it is the equivalent of them simply having ignored the request and that I should treat this as though not only that the agency had not issued a complete response, but, in essence, its response should be treated as a nullity.

And I think that the remedy for the concerns that you raise with respect to agencies possibly gaming the system is what I have just done here.  And that is that if there is a concern that the agency is raising arguments that are invalid arguments in order to simply avoid having to file a prompt response, the Court has within its power, once it is in court and once the agency has completed the agency's process, it is

now in my bailiwick.  And it is up to me to decide how to move the case forward quickly and that is what I have been doing here today.

In my view, the plaintiff's objection goes to the adequacy of the DOE's interpretation of the request and its search and request not to its completeness.  And the agency is not required to obtain a judicial declaration that its search was adequate or that its withholdings were warranted in order for its response to be complete as Judge Howell held in *Muttitt*.

Counsel also suggests perhaps that DOE is acting in bad faith here.  I am not convinced at this point that that is the case.  But if that is the case, you are welcome to address that in the further briefing.  And I will keep an open mind about that.  And I will say that even though I am dismissing -- I guess, it's actions 1829, 1887, 1957 and 1926 for lack of jurisdiction, I will do that without prejudice.  And if it turns out that down the road -- and I guess it is really only 1829 where this is relevant.  But down the road if you convince me that there was bad faith here in some way, you are welcome to request at that point reconsideration and that I reopen that case.  And I would be open to doing that upon a proper showing.

And then plaintiff also argues that DOE is judicially estopped from arguing that it has no responsive records to plaintiff's first FOIA request after it "Twice represented to

this Court that it had 97 responsive records."  And as I have indicated, what the agency said was potentially responsive records.  It didn't say that they were responsive.  And that is fairly typical in FOIA litigation for that type of thing to come up.  And it may be in the end that you are right and some of those records are more than potentially responsive and are responsive.  But I think that the -- both the most expeditious and the most appropriate way for us to do this is just by expedited briefing on the merits.

MR. HARDIN:  Thank you, Your Honor.

I have a case management question for you.  You say you are dismissing the expedited processing actions --

THE COURT:  Right.

MR. HARDIN:  -- but after they are consolidated, everything seems to be filed under the same case number.

THE COURT:  Correct.

MR. HARDIN:  Are you severing them and dismissing them?

THE COURT:  No.  No, I am not.  I just think to the extent that they are separate complaints or I am granting the motion, I guess.  You are right the cases are consolidated so they continue to exist in that regard, which I think may also assist you if want to come back to me at any point in time and say, Judge, they are really still in some sense in front of you and I'd like you to reconsider.

MR. HARDIN:  Okay.  So in the Court's mind, I don't have a final judgment on those?

THE COURT:  Correct.

MR. HARDIN:  Okay.  Thank you.

THE COURT:  All right.  Anything else today?

MS. GONZALEZ HOROWITZ:  Just two things, Your Honor. One, I think just a few days ago plaintiff filed a motion for preservation of records to prevent the agency from destroying the 97 potentially responsive records.

THE COURT:  I saw that.

MS. GONZALEZ HOROWITZ:  And I just wanted to take a moment to address that today, since we were appearing before the Court.

The agency has represented to me that because this case is in litigation, the records are going to be retained. So we would just ask that the Court deny plaintiff's request as moot.  The agency is retaining all of its records in the normal course of business and especially for a case in litigation, it understands it has an obligation to retain those records and it will do so.

THE COURT:  Mr. Hardin.

MR. HARDIN:  In light of her representation, we withdraw the motion.

THE COURT:  Okay.  The motion shall be deemed withdrawn.  Thank you.

MS. GONZALEZ HOROWITZ:  The second thing, Your Honor, is I just want to make it clear for the record -- certainly we are not there yet -- but to the extent that the Court would issue an order requiring the Department to produce within a certain period of time any records down the line, I just want to be clear about the Department of Justice's policy, we would likely ask for a stay of 60 days to implement whatever order the Court may issue, so that we can confer with the solicitor general about the Court's order.  So I just want to make that clear for the record and let plaintiff know that that is Justice policy.

THE COURT:  Okay.  Well, I think you are right in the sense that that is premature at this point.  And if we reach that point, we can address it if and when that comes up.

MS. GONZALEZ HOROWITZ:  Okay.

THE COURT:  All right.  Anything else before I let you off on your weekend?

MR. HARDIN:  Nothing from me, Your Honor.

THE COURT:  All right.  Thanks.  Have a nice weekend, everyone.

(Proceedings concluded at 4:46 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 20th day of November, 2024.

_____
Sherry Lindsay, RPR
Official Court Reporter